White, C. J.
The question in this case is, whether the limitation on the power of assessment prescribed by section ■542 of the municipal code, taken in connection with section 543, applies as well where the assessment is levied upon the abutting property, in proportion to frontage, as where the assessment is levied on the basis of the taxable valuation of such property.
The defendants, whose property is chargeable with the as* *374 sessment, contend that the limitation applies equally to-both modes of apportioning the assessment.
The plaintiff, the city, admits that if the assessment had been apportioned according to the taxable valuation of the property, the limitation would govern; but as the apportionment was made according to frontage, it is contended the limitation has no application. '
' The power of assessment is peculiarly liable to abuse; and owing to crude and inconsiderate legislation, the exercise of the power has sometimes been grossly oppressive to-property-owners.
The framers of the constitution, while recognizing the existence of the power, yet, in view of its liability to abuse, enjoined the duty on the general assembly, when conferring the power on municipal corporations, to so restrict it as to prevent its abuse. The provision of the constitution in so far as relates to the subject is as follows: “ The general assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of. . . assessment, . . . so as to prevent the-abuse of such power.” Const., art. 13, sec. 6.
The municipal corporation act of May 7, 1869, under which the present controversy arises, was passed in obedience to this injunction of the constitution; and in construing the provision of the act, it should be borne in mind that the granting of the power of assessment, and the duty of restricting its exercise so as to prevent abuse, is made-inseparable by the express provision of the constitution.
In order to properly understand the municipal code, respect must be had to the powers and duties of municipal corporations as they are found arranged and classified in the original act. 66 Ohio L. 149; The State ex rel. v. Strader, 25 Ohio St. 527.
The provisions involved in the present case are found in chapters 48 and 49.
Chapter 48 consisted of general rules relative to improvements and special assessment. No power of making special assessments was conferred in this chapter, as the act was *375 originally passed. Section 539, as subsequently amended,, did confer a new power of assessment; but the amendment does not affect the present case and need not here be referred to.
Chapter 49 relates to damages caused by the improvement, and to special assessments to pay the costs of the improvement.
The assessment in the present case was made under section 576, which is found in this chapter.
The original section is as follows :
“ For the payment of the cost of making said improvements, the council may, by ordinance, levy and assess a tax on all the lots or lands bounding or abutting on the proposed improvement, such tax to be either in proportion to the foot front of the lots or lands so bounding or abutting, or according to the value of such lots or lands as-assessed for taxation under the general law of the state, as may be equitable, and as the council may in each case determine.”
The section was amended April 18,1870 (67 Ohio L. 82); but the amendment does not affect the present case, the language of the original section being preserved as respects improvements like those nowin question.
The assessment authorized by this section has no relation to the acquisition of real estate for the making of improvements, but to the making of streets and other improvements where the necessary real estate has been acquired. Krumberg v. Cincinnati, 29 Ohio St. 74.
The power of assessment given by the section extends to the entire cost of the improvement, without regard to the relation the amount of such cost may bear to the value of the property assessed. There is no limitation upon the power found in the section, except in the description of the property that maybe assessed. This property consists of “ all the lots or lands bounding or abutting on the proposed improvement.”
~ The apportionment is to be “ either in proportion to the foot front of the lot or lands so bounding or abutting, or *376 according to the value of such lot or lands as assessed for taxation.”
The statute indicates no preference for one mode of apportionment over the other. The choice of the mode is left to the judgment and discretion of the council.
But the statute does clearly indicate that the burden is to be distributed upon the same property, whichever mdde of apportionment may be adopted.
The lots or lands which abut on the street do not. change their identity, but remain the same whether they are to be regarded with reference to their value as assessed for taxation, or their frontage on the street. And where land in a city is not laid out into lots, it is taxed in tracts or parcels as other lands are taxed, and the taxable valuation of such land is ordinarily as easily ascertained as the extent of its frontage on the street.' Indeed, the section assumes that the value of all the abutting lands is ascertained for the purposes of general taxation.
The limitation upon the power of. assessment, in addition to restricting it to the abutting property, is found in sections 542 and 543 of the municipal code. These sections form part of chapter 48, which contains general rules relative to special assessments.
Section 542 is as follows : “ In making a special assessment according to valuation, the council shall be governed by the assessed value of lots, where the land is subdivided and the lots are numbered a.nd recorded. Where there are lots which are not assessed for taxation, or there is land which is in bulk and not subdivided into such lota, the council shall fix the value of such lots, or the front of such land to the usual depth of lots, by the average of two blocks, one of which shall be the next adjoining on each side. If there are no blocks so adjoining, the council shall fix the value thereof, so that it will be a fair average of the assessed value of other lots in the neighborhood.”
Section 543 prescribes the maximum per centum of the value of the property that may be levied or assessed upon the property. As amended March 20, 1875, it limits the *377 .•assessment in all cases to 25 per centum of the value of the lot or land as assessed for taxation, except in cities of the •first class, when the limitation is 25 per centum, of the value after the improvement is made. 72 Ohio L. 68.
It is manifest that these sections were ingrafted into the system of assessments in obedience to the mandate of the •constitution, which requires the general assembly, in granting to municipal corporations the power of making assessments, to so restrict the power as to prevent its abuse.
The clear purpose of the sections is to operate on the assessing power of the corporation by restricting its exercise within defined limits, so as to secure reasonable uniformity in the imposition of the burden among the property-owners.
The legislature intended the limitation to fulfill the constitutional requirement and to be co-extensive with the power of assessment. The operation of the limitation was not intended to be dependent upon the mere exercise of the discretion of the city council in determining the mode of .apportionment.
The mode of apportionment is not the means intended for ascertaining the extent of the area of the abutting property subject to assessment. And it seems to us to be wholly inadmissible to suppose that the legislature intended that the assessment upon the same tract or parcel of land, if levied according to its taxable valuation, should be limited to the usual depth of lots by the average of the two adjoining blocks; but if levied by the frontage, the assessment should extend through the entire tract without reference to its depth.
Whatever might be the true construction of section 542 ■standing alone, yet when taken in connection with section's 543 and 576, and considered as part of the scheme or plan of assessments, we think the clear implication is that the same limitation applies to all assessments made under section 576, without reference to the mode adopted of apportioning the amount to be assessed. And what is clearly to be implied from a statute has the same force and effect as if lit had been expressed.
*378 It is true section 545 provides that, “ All special assessments shall be payable by the owner or owners of the property assessed personally, by the time stipulated in the ordinance makingtbe same, and shall be a lien from the date of the assessment, upon the respective lots or parcels of lands ussessed.”
But the question here is what constitutes the land to be-assessed. Abutting land not laid out into lots, when its-depth from the street is ascertained, constitutes a parcel of land for the purposes of assessment.
The object of this section, as was held in Douglass v. Cincinnati, 29 Ohio St. 165, is not to define the property liable to assessment to pay for the improvement; but to prescribe-the time at which the assessment becomes a lien on the property and a personal charge against the owner.
The conclusions of law found by the district court, and the judgment, are set aside ; and judgment will be entered in-accordance with this opinion.